UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

DONALD D. AUSTIN,

                              Plaintiff,

                -vs-                                        14-CV-861-JTC

CAROLYN W. COLVIN,
Acting Commissioner of Social Security,

                              Defendant.

---

APPEARANCES:    SEGAR & SCIORTINO (GREGORY T. PHILLIPS, ESQ., of Counsel), Rochester, New York, for Plaintiff

                             WILLIAM J. HOCHUL, JR., United States Attorney (JOANNE JACKSON, Special Assistant United States Attorney, of Counsel), Buffalo, New York, for Defendant.

This matter has been transferred to the undersigned for all further proceedings, by order of United States District Judge William M. Skretny dated October 8, 2015 (Item 12).

Plaintiff Donald D. Austin initiated this action on October 17, 2014, pursuant to the Social Security Act, 42 U.S.C. § 405(g) ("the Act"), for judicial review of the final determination of the Commissioner of Social Security ("Commissioner") denying plaintiff's application for Social Security Disability Insurance ("SSDI") under Title II of the Act. Both parties have moved for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure (see Items 8, 10). For the following reasons, plaintiff's motion is granted, and the Commissioner's motion is denied.

**BACKGROUND**

Plaintiff was born on November 27, 1969 (Tr. 117).[1] He has a high school education (Tr. 27), and a history of past relevant work as a shipping and receiving clerk, forklift operator, and warehouse foreman (Tr. 144-51). He protectively filed an application for SSDI on April 12, 2011, alleging disability as of March 9, 2010[2] due to chronic neck, back and shoulder pain following a work-related injury suffered on February 14, 2010 (*see, e.g.*, Tr. 205-07). This application was denied administratively on September 10, 2011 (Tr. 63-70). Plaintiff requested a hearing, which was held on November 16, 2012, before Administrative Law Judge (ALJ) Donald T. McDougall (Tr. 33-53). Plaintiff appeared and testified at the hearing, and was represented by counsel. Vocational Expert ("VE") Jay Steinbrenner also appeared and testified.

On December 6, 2012, the ALJ issued a decision finding that plaintiff was not disabled under the Act (Tr. 9-20). Following the sequential evaluation process outlined in the Social Security Administration regulations governing claims for benefits under Title II (*see* 20 C.F.R. § 404.1520), the ALJ found at step one that plaintiff had not engaged in substantial gainful activity since the alleged onset date, and at steps two and three, that plaintiff's "severe" impairments (identified as shoulder and spinal problems causing dysfuntion), considered singly and in combination, did not meet or equal the severity of any impairment listed at 20 C.F.R. Part 404, Subpart P, Appendix 1 (the "Listings") (Tr. 15).

---

[1] Parenthetical numeric references preceded by "Tr." are to pages of the administrative transcript filed by the Commissioner at the time of entry of notice of appearance in this action (Item 6).

[2] Plaintiff's original onset date of March 1, 2010, was amended to reflect work activity ending March 9, 2010 (*see* Tr. 178).

The ALJ then discussed the evidence in the record regarding the limitations caused by plaintiff's impairments, considering the objective medical evidence and plaintiff's hearing testimony regarding his complaints of pain, functional limitations, and activities of daily living (Tr. 15-18), and determined that plaintiff had the residual functional capacity ("RFC") to perform work at the "light"[3] exertional level, except that he needed to alternate between sitting and standing every 30 minutes, and could not perform overhead work (Tr. 15). The ALJ alluded to the treating source opinions of orthopedic surgeon Michael Grant, M.D., and neurosurgeon P. Jeffrey Lewis, indicating repeated assessments of "total" or "100%" disability (*see* Tr. 306-48). However, the ALJ found that these opinions were not supported by the "relatively mild examination findings and diagnostic imaging" in the record as a whole, and were contradicted by plaintiff's own testimony that he was able to lift 20 pounds (Tr. 18).

At step four of the sequential evaluation, the ALJ found that given plaintiff's functional limitations, he would not be able to perform his past relevant work as a shipping and receiving clerk, forklift operator, or warehouse foreman (Tr. 18). Considering plaintiff's age (40 years old as of the alleged onset date), education (twelfth grade), work experience and RFC, and relying on the testimony of VE Steinbrenner, the ALJ determined at the fifth

---

[3]"Light work" is defined in the regulations as follows:

Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time.

20 C.F.R. § 404.1567(b).

step that plaintiff would be capable of making a successful adjustment to other work that exists in significant numbers in the national economy, and was therefore not disabled within the meaning of the Act at any time from the original or amended alleged onset date (Tr. 18-19).

The ALJ's decision became the Commissioner's final determination on August 20, 2014, when the Appeals Council denied plaintiff's request for review (Tr. 1-6), and this action followed.

In his motion for judgment on the pleadings, plaintiff contends that the ALJ committed legal error in assessing plaintiff's RFC by giving improper weight to those portions of plaintiff's testimony supporting the assessment, while failing to give good reasons for the weight given to the opinions of plaintiff's treating sources. *See* Items 8-1, 11. The government contends that the Commissioner's determination should be affirmed because the ALJ's decision was made in accordance with the pertinent legal standards and based on substantial evidence. *See* Item 10-1.

## DISCUSSION

**I. Scope of Judicial Review**

The Social Security Act provides that, upon district court review of the Commissioner's decision, "[t]he findings of the Commissioner . . . as to any fact, if supported by substantial evidence, shall be conclusive …." 42 U.S.C. § 405(g). Substantial evidence is defined as evidence which "a reasonable mind might accept as adequate to support a conclusion." *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938), *quoted in Richardson v. Perales*, 402 U.S. 389, 401 (1971); *see also Tejada v.*

*Apfel*, 167 F.3d 770, 773-74 (2d Cir. 1999).  The substantial evidence test applies not only to findings on basic evidentiary facts, but also to inferences and conclusions drawn from the facts.  *Giannasca v. Astrue*, 2011 WL 4445141, at *3 (S.D.N.Y. Sept. 26, 2011) (citing *Rodriguez v. Califano*, 431 F. Supp. 421, 423 (S.D.N.Y. 1977)).

Under these standards, the scope of judicial review of the Commissioner's decision is limited, and the reviewing court may not try the case *de novo* or substitute its findings for those of the Commissioner.  *Richardson*, 402 U.S. at 401; *see also Cage v. Comm'r of Soc. Servs.*, 692 F.3d 118, 122 (2d Cir. 2012).  The court's inquiry is "whether the record, read as a whole, yields such evidence as would allow a reasonable mind to accept the conclusions reached" by the Commissioner.  *Sample v. Schweiker*, 694 F.2d 639, 642 (9th Cir. 1982), *quoted in Hart v. Colvin*, 2014 WL 916747, at *2 (W.D.N.Y. Mar. 10, 2014).

However, "[b]efore the insulation of the substantial evidence test comes into play, it must first be determined that the facts of a particular case have been evaluated in the light of correct legal standards."  *Klofta v. Mathews*, 418 F. Supp. 1139, 1411 (E.D.Wis. 1976), *quoted in Sharbaugh v. Apfel*, 2000 WL 575632, at *2 (W.D.N.Y. Mar. 20, 2000); *Nunez v. Astrue*, 2013 WL 3753421, at *6 (S.D.N.Y. July 17, 2013) (citing *Tejada*, 167 F.3d at 773).  "Failure to apply the correct legal standard constitutes reversible error, including, in certain circumstances, failure to adhere to the applicable regulations."  *Kohler v. Astrue*, 546 F.3d 260, 265 (2d Cir. 2008) (citations omitted).  Thus, the Commissioner's determination cannot be upheld when it is based on an erroneous view of the law, or misapplication of the regulations, that disregards highly probative evidence.  *See Grey v. Heckler*, 721 F.2d 41, 44 (2d Cir. 1983); *see also Johnson v. Bowen*, 817 F.2d 983, 985

(2d Cir. 1987) ("Failure to apply the correct legal standards is grounds for reversal."), *quoted in McKinzie v. Astrue*, 2010 WL 276740, at *6 (W.D.N.Y. Jan. 20, 2010).

If the Commissioner's findings are free of legal error and supported by substantial evidence, the court must uphold the decision. 42 U.S.C. § 405(g) ("The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive, and where a claim has been denied ... the court shall review only the question of conformity with [the] regulations…."); *see Kohler*, 546 F.3d at 265. "Where the Commissioner's decision rests on adequate findings supported by evidence having rational probative force, [the court] will not substitute [its] judgment for that of the Commissioner." *Veino v. Barnhart*, 312 F.3d 578, 586 (2d Cir. 2002). Even where there is substantial evidence in the record weighing against the Commissioner's findings, the determination will not be disturbed so long as substantial evidence also supports it. *See Marquez v. Colvin*, 2013 WL 5568718, at *7 (S.D.N.Y. Oct. 9, 2013) (citing *DeChirico v. Callahan*, 134 F.3d 1177, 1182 (2d Cir. 1998) (upholding the Commissioner's decision where there was substantial evidence for both sides)).

In addition, it is the function of the Commissioner, not the reviewing court, "to resolve evidentiary conflicts and to appraise the credibility of witnesses, including claimant." *Carroll v. Sec'y of Health and Human Services*, 705 F.2d 638, 642 (2d Cir. 1983); *cf. Cichocki v. Astrue*, 534 F. App'x 71, 75 (2d Cir. Sept. 5, 2013). "Genuine conflicts in the medical evidence are for the Commissioner to resolve," *Veino*, 312 F.3d at 588, and the court "must show special deference" to credibility determinations made by the ALJ, "who

had the opportunity to observe the witnesses' demeanor" while testifying. *Yellow Freight Sys. Inc. v. Reich*, 38 F.3d 76, 81 (2d Cir. 1994).

## II.     Standards for Determining Eligibility for Disability Benefits

To be eligible for SSDI or SSI benefits under the Social Security Act, plaintiff must present proof sufficient to show that she suffers from a medically determinable physical or mental impairment "which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months …," 42 U.S.C. § 423(d)(1)(A), and is "of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy …." 42 U.S.C. § 423(d)(2)(A); *see also* 20 C.F.R. § 404.1505(a).  As indicated above, the regulations set forth a five-step process to be followed when a disability claim comes before an ALJ for evaluation of the claimant's eligibility for benefits.  *See* 20 C.F.R.§ 404.1520.  First, the ALJ must determine whether the claimant is presently engaged in substantial gainful activity. If the claimant is not, the ALJ must decide if the claimant has a "severe" impairment, which is an impairment or combination of impairments that has lasted (or may be expected to last) for a continuous period of at least 12 months which "significantly limits [the claimant's] physical or mental ability to do basic work activities …." 20 C.F.R. § 404.1520(c); *see also* § 404.1509 (duration requirement).  If the claimant's impairment is severe and of qualifying duration, the ALJ then determines whether it meets or equals the criteria of an impairment found in the Listings.  If the impairment meets or equals a listed impairment, the claimant will be found to be disabled.  If the claimant does not have a listed impairment, the fourth

step requires the ALJ to determine if, notwithstanding the impairment, the claimant has the residual functional capacity to perform his or her past relevant work.  If the claimant has the RFC to perform his or her past relevant work, the claimant will be found to be not disabled, and the sequential evaluation process comes to an end.  Finally, if the claimant is not capable of performing the past relevant work, the fifth step requires that the ALJ determine whether the claimant is capable of performing any work which exists in the national economy, considering the claimant's age, education, past work experience, and RFC.  *See Curry v. Apfel*, 209 F.3d 117, 122 (2d Cir. 2000); *Lynch v. Astrue*, 2008 WL 3413899, at *2 (W.D.N.Y. Aug. 8, 2008).

The claimant bears the burden of proof with respect to the first four steps of the analysis.  If the claimant meets this burden, the burden shifts to the Commissioner to show that there exists work in the national economy that the claimant can perform. *Lynch*, 2008 WL 3413899, at *3 (citing *Rosa v. Callahan*, 168 F.3d 72, 77 (2d Cir. 1999)).  "In the ordinary case, the Commissioner meets h[er] burden at the fifth step by resorting to the applicable medical vocational guidelines (the grids), … [which] take into account the claimant's residual functional capacity in conjunction with the claimant's age, education, and work experience." *Rosa*, 168 F.3d at 78 (internal quotation marks, alterations and citations omitted).  If, however, a claimant has non-exertional limitations (which are not accounted for in the grids) that "significantly limit the range of work permitted by his exertional limitations then the grids obviously will not accurately determine disability status …." *Bapp v. Bowen*, 802 F.2d 601, 605 (2d Cir. 1986) (internal quotation marks and citation omitted).  In such cases, "the Commissioner must 'introduce the testimony of a

vocational expert (or other similar evidence) that jobs exist in the national economy which claimant can obtain and perform.' " *Rosa*, 168 F.3d at 78 (quoting *Bapp*, 802 F.2d at 603).

### III.  Plaintiff's Motion: Assessment of RFC

Plaintiff's primary contention in support of his motion for judgment on the pleadings is that the ALJ erred in assessing plaintiff's RFC by crediting those portions of plaintiff's hearing testimony supporting the assessment, while at the same time failing to fully and properly evaluate the weight to be accorded to the numerous treating source opinions on the extent of plaintiff's functional limitations.

An individual's RFC is his or her "maximum remaining ability to do sustained work activities in an ordinary work setting on a regular and continuing basis." *Melville v. Apfel*, 198 F.3d 45, 52 (2d Cir. 1999) (quoting Social Security Ruling ("SSR") 96–8p, 1996 WL 374184, at *2 (July 2, 1996)).  In making an RFC assessment, the ALJ should consider "a claimant's physical abilities, mental abilities, symptomology, including pain and other limitations which could interfere with work activities on a regular and continuing basis." *Pardee v. Astrue*, 631 F. Supp. 2d 200, 221 (N.D.N.Y. 2009) (citing 20 C.F.R. § 404.1545(a)).  "To determine RFC, the ALJ must consider all the relevant evidence, including medical opinions and facts, physical and mental abilities, non-severe impairments, and [p]laintiff's subjective evidence of symptoms." *Stanton v. Astrue*, 2009 WL 1940539, *9 (N.D.N.Y. July 6, 2009) (citing 20 C.F.R. §§ 404.1545(b)-(e)), *aff'd*, 370 F. App'x 231 (2d Cir. 2010); *see also O'Neil v. Colvin*, 2014 WL 5500662, at *5 (W.D.N.Y. Oct. 30, 2014).

The Second Circuit has repeatedly cautioned that, in making the RFC determination, " 'the ALJ cannot arbitrarily substitute his own judgment for a competent medical opinion …. [W]hile an [ALJ] is free to resolve issues of credibility as to lay testimony or to choose between properly submitted medical opinions, he is not free to set his own expertise against that of a physician who [submitted an opinion to or] testified before him.' " *Balsamo v. Chater*, 142 F.3d 75, 81 (2d Cir. 1998) (quoting *McBrayer v. Secretary of Health and Human Servs.*, 712 F.2d 795, 799 (2d Cir. 1983); *see also Rosa*, 168 F.3d at 79. In addition, the regulations specify that the ALJ should consider the following factors in evaluating the weight to be given medical opinion evidence: (1) the frequency of examination and length, nature, and extent of the treatment relationship; (2) the evidence in support of the physician's opinion; (3) the consistency of the opinion with the record as a whole; (4) whether the opinion is from a specialist; and (5) whatever other factors tend to support or contradict the opinion. *See* 20 C.F.R. § 404.1527(c); *see also Gunter v. Comm'r of Soc. Sec.*, 361 F. App'x 197, 199 (2d Cir. 2010). The Social Security regulations also recognize a " 'treating physician' rule of deference to the views of the physician who has engaged in the primary treatment of the claimant." *Green–Younger v. Barnhart*, 335 F.3d 99, 106 (2d Cir. 2003); *see also Cichocki*, 534 F. App'x at 74. While a treating physician's statement that the claimant is disabled "cannot itself be determinative …," *Snell v. Apfel*, 177 F.3d 128, 133 (2d Cir. 1999), "a treating source's opinion on the issue(s) of the nature and severity of [a claimant's] impairment(s)" will be given "controlling weight" if the opinion is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the

claimant's] case record." 20 C.F.R. § 404.1527(c)(2); *see also Burgess v. Astrue*, 537 F.3d 117, 128 (2d Cir. 2008) (noting that it is the Commissioner's role to resolve "genuine conflicts in the medical evidence," and that a treating physician's opinion is generally "not afforded controlling weight where the treating physician issued opinions that are not consistent with the opinions of other medical experts").

When the ALJ does not accord controlling weight to the medical opinion of a treating physician, the regulations require that the ALJ's written determination must reflect his consideration of the § 404.1527(c) factors, and must then "comprehensively set forth his reasons for the weight assigned to a treating physician's opinion." *Burgess*, 537 F.3d at 129 (internal alteration and citation omitted). The notice of determination must "always give good reasons" for the weight given to a treating source's opinion. 20 C.F.R. § 404.1527(c)(2); *see Schaal v. Apfel*, 134 F.3d 496, 503–04 (2d Cir. 1998) (stating that the Commissioner must provide a claimant with "good reasons" for the lack of weight attributed to a treating physician's opinion); *Halloran v. Barnhart*, 362 F.3d 28, 32–33 (2d. Cir. 2004) ("This requirement greatly assists our review of the Commissioner's decision and 'let[s] claimants understand the disposition of their cases.' ") (quoting *Snell*, 177 F.3d at 134).

As indicated above, in this case the record contains a considerable number of reports and office notes from Dr. Grant, who provided ongoing treatment to plaintiff during the relevant period following the work-related injury suffered in February 2010 (*see* Tr. 184-93, 221-22, 278-305, 331-48). Dr. Grant saw plaintiff on no less than twenty occasions between February 2010 and September 2012, and performed arthroscopic surgery on

plaintiff's right shoulder on August 1, 2011 (Tr. 300-01). On each of the office visits, Dr. Grant conducted a physical examination of plaintiff, with primary focus on plaintiff's right shoulder; reviewed available x-rays, MRIs, and other diagnostic studies; and made findings regarding plaintiff's functional limitations, invariably concluding nearly every report with the opinion that plaintiff was "totally disabled" (Tr. 185, 187, 189, 191, 192, 222, 280, 284, 288, 292, 296, 305, 332, 333, 336, 338, 342, 346).

Dr. Lewis also saw plaintiff on several occasions during the relevant period, beginning in May 2010 upon referral from Dr. Grant for neurosurgical evaluation of the cervical spine, and continuing through October 2012 (*see* Tr. 194-207, 558-60, 306-29). Dr. Lewis performed a cervical discectomy in August 2010 (Tr. 259-60), and spinal fusion in April 2012 (Tr. 320), at the C5-C6 level. Similar to Dr. Grant's reports, Dr. Lewis's notes of follow-up office visits reflect medical findings made upon physical examination and review of diagnostic studies, and each report contains a rating of plaintiff's work-related disability at 100% (Tr. 194, 197, 199, 204, 206, 308, 312, 315, 316, 318, 324, 328).

Citing *Taylor v. Barnhart*, 83 F. App'x 347, 349 (2d Cir. 2003), and 20 C.F.R. § 404.1527(d)(1),[4] the Commissioner argues that Dr. Grant's and Dr. Lewis's opinions on the degree of plaintiff's disability are not to be considered as medical opinions, and are not entitled to any weight, because they deal with issues reserved exclusively for the Commissioner. However, as clearly explained by the Second Circuit in *Snell v. Apfel*:

---

[4]20 C.F.R. § 404.1527(d)(1) provides:

Opinions that you are disabled. We are responsible for making the determination or decision about whether you meet the statutory definition of disability. In so doing, we review all of the medical findings and other evidence that support a medical source's statement that you are disabled. A statement by a medical source that you are "disabled" or "unable to work" does not mean that we will determine that you are disabled.

> Reserving the ultimate issue of disability to the Commissioner relieves the Social Security Administration of having to credit a doctor's finding of disability, but it does not exempt administrative decisionmakers from their obligation, under *Schaal* and § 404.1527([c])(2), to explain why a treating physician's opinions are not being credited. The requirement of reason-giving exists, in part, to let claimants understand the disposition of their cases, even—and perhaps especially—when those dispositions are unfavorable. A claimant … who knows that h[is] physician has deemed h[im] disabled, might be especially bewildered when told by an administrative bureaucracy that [ ]he is not, unless some reason for the agency's decision is supplied. [The claimant] is not entitled to have [a treating physician]'s opinion on the ultimate question of disability be treated as controlling, but [ ]he is entitled to be told why the Commissioner has decided—as under appropriate circumstances is his right—to disagree with [the physician].

*Snell*, 177 F.3d at 134 (citation omitted).

The court's review of the record in this case reveals that the findings and opinions set forth in the reports of Drs. Lewis and Grant – the specialists who provided consistent primary treatment to plaintiff for the medical conditions causing the allegedly disabling dysfunction throughout the relevant period – were based upon regular physical examinations, reviews of x-rays and MRIs, and other medically acceptable clinical and laboratory diagnostic techniques. These reports provided not only the treating physicians' opinions on the ultimate question of disability, but also their detailed findings and observations relevant to the issues of the nature, severity, and functionally limiting effects of plaintiff's impairments. In the court's view, under the guidance of *Schaal* and the requirements of § 404.1527(c), plaintiff was entitled to a comprehensive explanation of the reasons why the ALJ gave those opinions little, if any, weight in his assessment of plaintiff's RFC. The ALJ's failure to do so in this case cannot be justified by mere reliance on the reservation of issues under § 404.1527(d)(1), simply because the treating physicians' reports also state that plaintiff was "totally disabled."

For these reasons, and upon review of the administrative record as a whole, the court finds that the ALJ's RFC assessment in this case was based on a misapplication of the regulations and case law governing consideration of the findings and opinions of treating medical sources, with the result that the Commissioner's denial of plaintiff's claim for SSDI benefits is not supported by substantial evidence. Accordingly, the matter must be remanded to the Commissioner for further consideration in accordance with the matters discussed herein. On remand, the Commissioner shall consider "[a]ny issues relating to [plaintiff's] claim ...." 20 C.F.R. § 404.983.

## **CONCLUSION**

Based on the foregoing, plaintiff's motion for judgment on the pleadings (Item 8) is granted, the Commissioner's motion for judgment on the pleadings (Item 13) is denied, and the case is remanded to the Commissioner pursuant to sentence four of 42 U.S.C. § 405(g) for further proceedings in accordance with the matters discussed above.

The Clerk of the Court is directed to enter judgment in favor of plaintiff, and to close the case.

So ordered.

    \s\ John T. Curtin
    JOHN T. CURTIN
    United States District Judge

Dated: January 27, 2016
p:\pending\2014\14-861.ssdi.jan13.2016